**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **JOHHNY MORENO,** | § | |
| | § | |
| **Plaintiff** | § | |
| **VS.** | § | **CIVIL ACTION NO. 6:23-cv-00026** |
| | § | |
| **CITY OF VICTORIA, ET AL.** | § | **JURY DEMAND** |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS TRENTON BALLARD, ROYALL ALLEN, ROGER BELARIO AND TAYLOR HERRERA'S MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendants, Trenton Ballard ("Officer Ballard"), Royall Allen ("Officer Allen"), Roger Belario ("Officer Belario") and Taylor Herrera ("Officer Herrera")[1], and file this, their Motion for Summary Judgment based on Qualified Immunity on all constitutional claims made against them, and in support hereof would show the Court as follows:

## I. FACTUAL BACKGROUND

1. During the middle of the afternoon on April 20, 2021, the Victoria Police Department received a 911 call that a Hispanic male in a white muscle shirt and black pants was beating a female in a parking lot in the middle of town.[2] Officer Ballard, Officer Allen, Officer Balerio (hereinafter occasionally referred to as "the Officers") and Officer J. Smith were dispatched to the scene.[3] While enroute the officers were advised of the situation, the description of the offender and the vehicle the offender was in.[4] Officer Ballard and Officer Balerio were in the same patrol

[1] Officer J. Sepulveda has not been served to undersigned's knowledge.
[2] Ex. 12.
[3] Ex. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, & 15.
[4] Ex. 13, 14 & 15.

vehicle.[5] When they made the scene, they pulled behind the vehicle that Plaintiff was a passenger in and that the potential victim was driving.[6] Officer Ballard approached the passenger side of the vehicle.[7] He requested that Plaintiff step out of the vehicle.[8] Plaintiff complied.[9] When Plaintiff exited the vehicle, he put his hands behind his back and asked to be placed in handcuffs.[10] Officer Ballard placed Plaintiff in handcuffs and removed a knife from Plaintiff's front pocket.[11] Then, Officer Balerio exited the patrol vehicle and approached Officer Ballard and Plaintiff.[12] About this time, Officer Allen and Officer Smith arrive at the scene.[13] Upon, Officer Allen and Officer Smith's arrival at the scene, they initially went to speak to the alleged victim, Jennifer Sendejo.[14] Then, Officer Allen approached Officer Ballard, Officer Balerio and Plaintiff while Officer Smith stayed with Ms. Sendejo.[15]

2. Shortly after putting handcuffs on Plaintiff, Officer Ballard began to escort Plaintiff to his patrol vehicle.[16] While doing so, Plaintiff pulled away from Officer Ballard's control.[17] Officer Allen then assisted to gain control and compliance from Plaintiff.[18] He held onto Plaintiff's left wrist and attempted to escort him back to the patrol vehicle.[19] During this time, Officer Balerio was instructing Plaintiff to calm down and comply with the Officers.[20] While being escorted to

---

[5] Ex. 1 & 8.
[6] Ex. 1, 4 & 8.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] Ex. 1, 4, 8 & 13.
[11] Ex. 1 at :50 – 1:00.
[12] Ex. 8.
[13] Ex. 5 & 11.
[14] *Id.*
[15] Ex. 1, 4, 5, & 8.
[16] Ex. 1 & 4.
[17] Ex. 1, 4, 5, 8, 13, 14 & 15.
[18] *Id.*
[19] *Id.*
[20] Ex. 8.

the patrol vehicle, Plaintiff attempted to stop and turn away from the patrol vehicle.[21] In order to gain control and compliance from Plaintiff, the Officers turned Plaintiff back around and attempted to push Plaintiff's chest against the patrol vehicle.[22] While attempting to gain control of Plaintiff by placing him against the patrol vehicle, Plaintiff was actively resisting and pushed his foot against the patrol vehicle in an attempt to prevent the Officers from gaining control.[23] In a further attempt to gain control of and compliance from Plaintiff, Officer Allen and Officer Balerio turned Plaintiff away from the patrol vehicle and put him on the ground in a grassy area next to the street.[24] Plaintiff's head did not touch concrete or asphalt in the process.[25] Once on the ground, Plaintiff stopped actively resisting.[26] During the entire interaction with Plaintiff, Plaintiff continuously cussed at the Officers.[27] Also, from the time Plaintiff was placed in handcuffs until he was escorted to the ground and stops resisting, approximately forty (40) seconds elapses.[28]

3. Once on the ground, Plaintiff stated that his neck was broken. As such, EMS was immediately requested.[29] Soon after, EMS arrived at the scene.[30] However, once EMS arrived at the scene, Plaintiff refused to be assessed or treated by EMS.[31] During this whole time, Plaintiff continued to fling profanities at everyone.[32]

4. After getting Ms. Sendejo's version of the story and her advising that Plaintiff did not assault her, Plaintiff was released from custody.[33] After being released from custody, Plaintiff

---

[21] Ex. 1, 4, 5, 8, 13, 14 & 15.
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] Ex. 1, 5 & 8.
[28] Ex. 1, 4, 5 & 8.
[29] Ex. 2, 3 & 10.
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] Ex. 2, 3, 7, 10 & 12.

stood up and walked to Ms. Sendejo's car and got in the passenger seat on his own.[34] He stated that he was going to the hospital. To date, no medical records of Plaintiff from a hospital from April 20, 2021 have been produced to Defendants.

5. The body worn cameras of Officer Ballard, Officer Balerio, Officer Allen and Officer Smith, the patrol vehicle camera of Officer Ballard and the body worn camera of EMS personnel captured the incident on video, so that there is no dispute regarding the incident facts.

## II. PLAINTIFF'S CLAIMS

6. Plaintiff alleges that Officer Ballard, Officer Allen and Officer Balerio used excessive force in detaining Plaintiff, wrongfully detained him and failed to provide him adequate medical care in violation of his constitutional rights.[35] In addition, Plaintiff brings a claim against Officer Herrera for failing to intervene. However, Officer Herrera was not at the scene during the altercation with Plaintiff.[36]

## III. GROUNDS FOR DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

7. The Officers are entitled to qualified immunity because no constitutional violation occurred and the law was not clearly established that any of their use of force in the form of going hands-on was "clearly excessive" and "objectively unreasonable" in response to Plaintiff's conduct and the totality of the circumstances. In addition, Plaintiff has not produced any evidence that he sustained more than a *de minimis* injury. Further, in the event a fact issue exists as to whether any of the Officers are entitled to qualified immunity on the excessive force claim, the competent summary judgment evidence conclusively establishes that the Officers did not know that either of the other two officers were violating Plaintiff's constitutional rights; had a reasonable opportunity

---

[34] Ex. 2, 7 & 10.
[35] D.E. 39.
[36] Ex. 13, 14 & 15.

to prevent the harm; and choose not to act. Therefore, Plaintiff's failure to intervene claim does not amount to a constitutional violation. At the very least, the law was not clearly established that the Officers' failure to intervene amounted to a constitutional violation. Regarding Plaintiff's wrongful detention claim, the Officers are entitled to qualified immunity because no constitutional violation occurred and the law was not clearly established that the brief detention of Plaintiff to investigate a 911 call that Plaintiff was beating a female and Officer Ballard's placing handcuffs on Plaintiff at his request amounted to a constitutional violation given the totality of the circumstances. Lastly, Plaintiff was not denied adequate medical care. EMS was requested soon after Plaintiff complained of his neck hurting and promptly responded to the scene. At the very least, the law was not clearly established as to Plaintiff's denial of adequate medical care claim that the Officers' conduct in requesting EMS amounted to a constitutional violation.

## IV. SUMMARY JUDGMENT EVIDENCE

8. In this *Motion for Summary Judgment*, Defendants rely upon the following evidence:

Exhibit 1: Officer Ballard's Body Worn Camera Video 1;

Exhibit 2: Officer Ballard's Body Worn Camera Video 2;

Exhibit 3: EMS personnel's Body Worn Camera Video;

Exhibit 4: Officer Ballard's Patrol Car Camera Video;

Exhibit 5: Officer Allen's Body Worn Camera Video 1;

Exhibit 6: Officer Allen's Body Worn Camera Video 2;

Exhibit 7: Officer Allen's Body Worn Camera Video 3;

Exhibit 8: Officer Balerio's Body Worn Camera Video 1;

Exhibit 9: Officer Balerio's Body Worn Camera Video 2;

Exhibit 10: Officer Balerio's Body Worn Camera Video 3;

Exhibit 11: Officer J. Smith's Body Worn Camera Video;

Exhibit 12: 911 Call to Dispatch for Incident;

Exhibit 13: Affidavit of Officer Ballard;

Exhibit 14: Affidavit of Officer Allen; and

Exhibit 15: Affidavit of Officer Balerio.

## V. LEGAL STANDARDS AND LAW FOR SUMMARY JUDGMENT AND QUALIFIED IMMUNITY

**Legal Standard for Summary Judgment**

9. Summary judgment is proper "if the movant shows that there is no genuine disputes as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp*., 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id*. But, courts are not required to accept a party's rendition of the facts where it is blatantly contradicted by video evidence. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

10. The defense of qualified immunity alters the ordinary summary judgment burden:

> In the context of a party asserting immunity in a summary judgment motion, "[t]he moving party is not required to meet its summary judgment burden for a claim of immunity. It is sufficient that the movant in good faith pleads that it is entitled to absolute or qualified immunity. Once the [movant] asserts this affirmative defense, the burden *shifts* to the plaintiff to rebut it."

*Hathaway v. Bazany*, 507 F.3d 312, 319 (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (per curiam) (emphasis and bracketed material in original)). To sustain his burden, the plaintiff cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The plaintiff must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of his cause(s) of action. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

**<u>Law of Qualified Immunity</u>**

11. Qualified immunity serves to protect public officials from discovery and liability, except where a plaintiff shows that (1) the official's conduct violated a constitutional or statutory right, and (2) the official's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). A public official/employee violates "clearly established law" when, at the time of his conduct, the contours of a right are so clear that "every reasonable official" would understand his conduct violates the right. *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (citations and quotations omitted).

12. "A qualified immunity defense alters the usual summary judgment burden of proof. Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). "When a defendant pleads qualified immunity as an affirmative defense and moves for summary judgment, a court must decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether that right was 'clearly established' at the time of the defendant's alleged misconduct." *Ontiveros*

*v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009). Qualified immunity applies "unless the defendant's conduct violated a clearly established constitutional right." *Id*. District courts may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

13. To overcome an assertion of qualified immunity, a plaintiff must show that the defendant's conduct violated a constitutional right and that the right was clearly established when the violation occurred. *Williams v. City of Cleveland*, 736 F.3d 684, 688 (5th Cir. 2013). This standard is designed to shield "from civil liability 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 845 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). It "thus protects an officer with a mistaken, yet reasonable understanding of the law from the 'hazy boundary between excessive and acceptable force.'" *Manis v. Lawson*, 585 F.3d 839, 846 (5th Cir. 2009) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). "A right may be clearly established without 'a case directly on point,' but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Hanks*, 853 F.3d at 746–47 (quoting *White v. Pauly*, — U.S. —, 137 S.Ct. 548, 551 (2017) (per curiam)). In order to survive summary judgment, a plaintiff must prove that he has competent summary judgment evidence which at least creates a fact issue that a defendant is not entitled to qualified immunity. Here, Plaintiff has no evidence which creates such a fact issue on any of his claims. To the contrary, the uncontroverted summary judgment evidence establishes the Officers' right to qualified immunity.

## VI. ARGUMENT AND AUTHORITY

**Excessive Force Claim**

14. "In the Fifth Circuit, to succeed on an excessive force claim, the plaintiff bears the burden of showing: (1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Cass v. City of Abilene*, 814 F.3d 721, 731 (5th Cir. 2016) (quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Claims of Fourth Amendment violations involving excessive force are fact-intensive inquiries that must consider the totality of the circumstances. *Darden v. City of Ft. Worth*, 880 F.3d 722, 728-29, (5th Cir. 2018) (citing *Graham*, 490 U.S. at 396, 109 S.Ct. 1865). Proper application of the test for Fourth Amendment reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 390. This analysis focuses on objective reasonableness without regard to the officer's motives or intents. *Graham*, 490 U.S. at 397. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

15. Plaintiff makes an excessive force claim against Officer Ballard, Officer Balerio and Officer Allen. The Court should grant the Officers' motion for summary judgment as to their entitlement to qualified immunity defense because, when viewing the undisputed facts in the light most favorable to Plaintiff, the Officers' use of force against Plaintiff was not excessive and objectively unreasonable. Further, based upon the facts and law, a reasonable officer could have believed that the Officers' conduct was lawful under the circumstances.

**A. The Officers' use of force was reasonable**

16. Plaintiff cannot overcome the first prong of the qualified immunity defense because no violation of a constitutional right occurred. Analyzing the facts and circumstances of this case utilizing the *Graham* factors confirms the Officers used reasonable force that was not clearly excessive to the need of force. Therefore, the Officers did not violate Plaintiff's constitutional rights through the use of excessive force.

17. First, courts consider the severity of the crime the suspect committed or is suspected of committing. *Graham*, 490 U.S. at 396. In this case, Plaintiff had been suspected of physically assaulting Ms. Sendejo just minutes before the Officers arrived.[37] Also, Plaintiff had a knife in his front pocket.[38] Further, before any force was used, Plaintiff began actively resisting detention.[39] The suspected crime associated with the call to which the Officers responded and Plaintiff's possession of a knife and active resistance of the Officers' attempt to detain him clearly involve physical violence and the potential for bodily harm. The first *Graham* factor weighs heavily in favor of the Officers' use of force in the form of going hands on and taking Plaintiff to the ground.

---

[37] Ex. 12.
[38] Ex. 1.
[39] Ex. 1, 4, 5 & 8.

18. The second *Graham* factor requires the court to determine if the subject posed an immediate threat of harm to the officers or others. *Graham*, 490 U.S. at 396. Here, the facts and circumstances would lead any reasonable officer to believe that Plaintiff posed an immediate threat to the Officers, Ms. Sendejo and himself. First, based on the 911 call, the Officers reasonably believed that Plaintiff was a threat to Ms. Sendejo.[40] That is why they responded to the call and wanted to detain Plaintiff to investigate what occurred. Then, once Plaintiff starts actively resisting and pulling away from the Officers, he is not only a threat to the Officers but also himself given that he is handcuffed and a busy street with lots of traffic is near-by in the event he attempted to run from the Officers.[41] Given these facts and circumstances regarding the call to which the Officers responded and Plaintiff's conduct, the second *Graham* factor strongly supports the Officers' use of force in the form of going hands on and taking Plaintiff to the ground.

19. The last *Graham* factor calls for the Court to consider whether the suspect actively resisted arrest or attempted to evade arrest by flight. Originally, Plaintiff complied with Officer Ballard's command to exit the vehicle. Plaintiff even requested to be placed in handcuffs.[42] However, once Officer Ballard started to escort Plaintiff away from the vehicle Ms. Sendejo was in and towards his patrol vehicle, Plaintiff started resisting and throwing profanities towards the Officers.[43] While resisting, Plaintiff broke free from Officer Ballard and Officer Allen had to step in to attempt to gain control of Plaintiff.[44] When Plaintiff continued to resist, Officer Balerio had to go hands on and assist getting Plaintiff under control by placing him against the patrol vehicle.[45] However, their efforts did not achieve the desired result. Rather, Plaintiff tried to push away from the vehicle

---

[40] Ex. 12.
[41] Ex. 1, 4, 5 & 8.
[42] Ex. 1.
[43] Ex. 1, 4 & 8.
[44] Ex. 1, 4, 5 & 8.
[45] *Id*.

with his leg.[46] At this time, the Officers took plaintiff to the ground in a grassy area just beside the patrol vehicle.[47] Finally, as a result of getting Plaintiff on the ground, the Officers were able to gain control of Plaintiff. Given these facts and circumstances regarding the call to which the Officers responded and Plaintiff's conduct, the third *Graham* factor strongly supports the Officers' use of force in that of going hands on and taking Plaintiff to the ground.

20. The *Graham* criteria for accessing excessive force conclude the Officers' conduct did not reach the level of excessive force. The Officers used only the minimal amount of force necessary to gain control and compliance of Plaintiff and ceased using any force once they gained control. It is unquestionable officers have a right to employ some level of force in order to effectuate an arrest and in effectuating an arrest, a police officer "may exert such physical force as is necessary to effect the arrest by overcoming the resistance he encounters." *Wallace v. Harber*, 1993 WL 82379, *3 (5th Cir.1993); *See Galvan v. City of San Antonio*, 435 Fed.Appx. 309, 311 (5th Cir.2010) (explaining that the use of force was reasonable when it involved "measured and ascending responses" to a plaintiff's noncompliance). In light of the totality of the circumstances, including analysis of the *Graham* factors, it is clear the Officers acted with objectively reasonable force.

**B. The Deputies use of force did not violate clearly established law**

21. A reasonable officer could have believed that it was lawful for the Officers to go hands on and take Plaintiff to the ground after he had been accused of beating Ms. Sendejo, actively resisted the Officers attempts to escort him to the patrol vehicle and failed to comply with the Officers commands. The summary judgment evidence presented through the body camera and patrol car recordings, 911 call and Officers' affidavits conclusively establish that a reasonable officer, given

[46] Ex. 1, 5 & 8.
[47] *Id*.

the totality of the circumstances, could believe that the Officers' conduct was lawful. Further, no case law exists establishing a violation of the Fourth Amendment beyond debate at the time of the incident made the basis of this suit.

**Failure to Intervene Claim**

22. First, Plaintiff's failure to intervene claim against Officer Herrera fails because the competent summary judgment evidence conclusively establishes that Officer Herrera was not present at the time the Officers went hands on with Plaintiff. Second, as explained in detail above, the Officers' conduct did not amount to a use of force which was clearly excessive to the need of force; thus, no constitutional violation occurred and there can be no failure to intervene claim. Next, to the extent Plaintiff brings a failure to intervene claim against Officer Ballard, Officer Belario and Officer Allen and, to the extent a fact issue exists as to whether the Officers were entitled to qualified immunity on the excessive force claim, they are still entitled to qualified immunity on the failure to intervene claim.

23. The Fifth Circuit articulated the theory of bystander liability as follows: [A]n officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act. *Whitley v. Hanna,* 726 F.3d 631, 646 (5th Cir. 2013), *cert. denied,* —— U.S. ——, 134 S.Ct. 1935, 188 L.Ed.2d 960 (2014) (internal quotation marks, citations, and footnote omitted). *See Hale v. Townley,* 45 F.3d 914, 919 (5th Cir.1995). The First Circuit has further clarified the elements of a failure to intervene claim and has held that a defendant can be liable under § 1983 for failing to intervene if the defendant was present when the force was used, observed the use of excessive force, was in a position where he could realistically

prevent the force, and had sufficient time to prevent it. *Davis v. Rennie,* 264 F.3d 86, 97–98 (1st Cir. 2001).

24. Here, the competent summary judgment evidence conclusively establishes that none of the Officers believed that any of the other two were violating Plaintiff's rights. In addition, even if one had, there was not an opportunity to intervene because the entire incident with Plaintiff happened so quickly.[48] Given how quickly things occurred, there would not have been a realistic chance for any one of the Officers to stop one of the other Officers from taking Plaintiff to the ground. As such, he should be entitled to summary judgment dismissal.

25. Lastly, Plaintiff cannot demonstrate that every reasonable peace officer standing in any of the Officers' shoes at the time Plaintiff was taken to the ground would have believed that failing to prevent any of the other two Officers' taking of Plaintiff to the ground was a violation of clearly established law. As such, at the very least, Officer Ballard, Officer Balerio and Officer Allen are entitled to summary judgment on his qualified immunity defense.

**Wrongful Detention Claim**

**a. Probable Cause Existed for the Detention of Plaintiff**

26. The competent summary judgment evidence conclusively establishes that probable cause existed for the detention of Plaintiff to investigate the alleged assault against Ms. Sendejo. "The constitution does not guarantee that only the guilty will be arrested." *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982). The constitutional claim of false arrest requires a showing of no probable cause. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009). Probable cause requires only "a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

[48] Ex. 1, 4, 5 & 8.

Probable cause is a "practical and common-sensical standard." *Florida v. Harris*, 568 U.S. 237, 244, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013). It looks to the "totality of the circumstances" to determine whether the magistrate with "the facts available to [him] would 'warrant a [person] of reasonable caution in the belief'" to find that the suspect committed the crime for which he is being arrested. *See id.* at 243, 133 S.Ct. 1050 (alterations in original) (quoting *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion)).

27. First, Plaintiff requested to be put in handcuffs. The Officers were simply detaining Plaintiff to investigate the allegations of the 911 call that Plaintiff was physically assaulting Ms. Sendejo.[49] As occurs regularly when law enforcement responds to a call of domestic violence, they separate the individuals from each other and speak to them in an attempt to sort out what has actually occurred. That is exactly what Officer Ballard was attempting to do here when he asked Plaintiff to step out of the vehicle. Once Plaintiff said to put him in handcuffs, Officer Ballard did so. He then requested Plaintiff to walk away from the vehicle where Ms. Sendejo was located to his patrol vehicle only a few feet away. Had Plaintiff not of resisted during this short walk, once Officer Ballard and Plaintiff arrived at the patrol vehicle, the Officers would have talked to both Plaintiff and Ms. Sendejo separately. Then, once the situation was sorted out the way it ended up being sorted out, Plaintiff would have been released from custody just like he was after the struggle occurred. Clearly, based on the competent summary judgment evidence, at a minimum, reasonable suspicion to detain Plaintiff and investigate existed.

28. If the Court finds that a fact issue exists as to whether probable cause or reasonable suspicion existed and that Plaintiff's detention amounted to a constitutional violation given the facts of this case, at the very least, the Officers are still entitled to qualified immunity because the

[49] Ex. 12.

law is not clearly established that an officer would not have probable cause or reasonable suspicion to detain someone to investigate a 911 call of the individual physically assaulting a female.

**<u>Deliberate Indifference to Plaintiff's Serious Medical Needs Claim</u>**

29. The Fourteenth Amendment protects pretrial detainees' right to medical care and to "protection from known suicidal tendencies." *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019); *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). A government official violates a Fourteenth Amendment right when the official acts with deliberate indifference to a detainee's serious medical needs. To prove deliberate indifference, Plaintiff must show that the Officers were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," that the Deputies actually "dr[e]w the inference," and that the Officers "disregard[ed] that risk by failing to take reasonable measures to abate it." *Baldwin v. Dorsey*, 19-20465, 2020 WL 3567059, at *3 (5th Cir. July 1, 2020); *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)); *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). Finally, the Plaintiff must show that "substantial harm" resulted from the Officers' alleged deliberately indifferent conduct. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).

30. "Deliberate indifference is an extremely high standard to meet." *Id.* at 756. An incorrect prescription or even a "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Id.* Rather the plaintiff must establish "that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756. Stated differently, in order to prevail on a

claim of constitutionally inadequate medical care, an arrestee must show that officers displayed deliberate indifference to a serious risk of bodily harm, a standard greater than "[m]ere negligence, or even gross negligence." *Gilbert v. French*, 665 F.Supp.2d 743, 760 (S.D. Tex. 2009).

31. Here, the competent summary judgment evidence conclusively establishes that immediately after Plaintiff complained of his neck hurting EMS was requested.[50] EMS arrived a short time later and attempted to assess Plaintiff, but he refused.[51] Instead, he proceeded to be hostile towards the EMS personnel.[52]

32. In *Marshall*, this District Court held that an officer's obligation to provide medical care is ordinarily satisfied by calling an ambulance or permitting EMS access to the injured individual. *McIntosh v. Smith*, 690 F. Supp. 2d 515, 529-30 (S.D. Tex. 2010) (finding no deliberate indifference to medical needs of suspect shot by officer, where officer immediately radioed that shots were fired and ambulance arrived shortly thereafter). Likewise, the Fifth Circuit in *Fortune* and *Mace* held the same thing. *Fortune v. McGee,* 606 Fed. Appx. 741, 743–44 (5th Cir. 2015) (finding no deliberate indifference where the deputy sheriff called for an ambulance as soon as he realized Fortune was in distress, and helped Fortune to the first floor so he could be transported to the hospital because it did not "evince a wanton disregard" for Fortune's serious medical needs as the deputy sheriff did not refuse to treat Fortune, ignored his complaints, or intentionally treated him incorrectly.); *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003) (the summoning of an ambulance to a scene of a shooting even though a significant period of time passed before the suspect was transported to an emergency room was not found to be deliberate indifference).

---

[50] Ex. 3.
[51] *Id.*
[52] *Id.*

33. Here, EMS was summoned immediately after Plaintiff complained of his neck hurting. Given the facts here, no claim of §1983 "deliberate indifference", as a matter of law, can exist. Furthermore, based on this District and the Fifth Circuit's rulings in *Marshall, Fortune* and *Mace*, as explained above, a reasonable officer could have believed that none of the Officers violated Plaintiff's rights in failing to provide adequate medical care where EMS was requested right after Plaintiff complained of his neck hurting.

## VII. CONCLUSION

34. Again, in the qualified immunity context, the burden of proof is on Plaintiff. In order to survive Summary Judgment, Plaintiff must present evidence that establishes a fact issue regarding the Officers' entitlement to qualified immunity on all of his claims. Here, Plaintiff has no evidence which creates such a fact issue. The uncontroverted Summary Judgment evidence conclusively establishes the Officers' right to qualified immunity because they did not violate a constitutional right of Plaintiff and violated no clearly established law.

## VIII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Officer Ballard, Officer Allen, Officer Balerio and Officer Herrera, pray that the Court GRANT Defendants' Motion for Summary Judgment and dismiss all causes of action asserted by Plaintiff against them and for such other and further relief to which they may be justly entitled.

Respectfully submitted,

CULLEN, CARSNER, SEERDEN & CULLEN, L.L.P.
119 South Main Street (77901)
Post Office Box 2938
Victoria, Texas 77902-2938
Tel: (361) 573-6318
Fax: (361) 573-2603

By: /s/ Casey T. Cullen
Casey T. Cullen
Southern District of Texas Bar No. 1130427
**ATTORNEYS FOR DEFENDANTS DEFENDANTS TRENTON BALLARD, ROYALL ALLEN, ROGER BELARIO AND TAYLOR HERRERA**

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing pleading has been served on all counsel of record on this the 17th day of June, 2024 via ECF electronic notice in compliance with Rule 5 of the Federal Rules of Civil Procedure and paragraph 9 of the Southern District of Texas's Administrative Procedures for Electronic Filing in Civil and Criminal Cases by notice of Electronic Filing in accordance with the Federal Rules of Civil Procedure.

/s/ Casey T. Cullen
Casey T. Cullen