**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **JOHNNY MORENO,** *Plaintiff,* | § | |
| | § | **Case. No. 6:23-cv-00026** |
| **VS.** | § | **JURY DEMANDED** |
| | § | |
| **CITY OF VICTORIA, ET AL.** *Defendants.* | § | |

**PLAINTIFF RESPONSE TO DEFENDANTS TRENTON BALLARD, ROYALL ALLEN, ROGER BELARIO AND TAYLOR HERRERA'S MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY DKT 42**

**TO THE HONORABLE JUDGE DAVID S. MORALES:**

Plaintiff Johnny Moreno files this his response to Defendants, Trenton Ballard ("Officer Ballard"), Royall Allen ("Officer Allen"), Roger Belario ("Officer Belario") and Taylor Herrera ("Officer Herrera")[1], Motion for Summary Judgment based on Qualified Immunity on all constitutional claims made against them, and in support would show the Court as follows:

## TABLE OF CONTENTS


**TABLE OF CONTENTS** 1
**TABLE OF AUTHORITIES** 2
**I. FACTUAL BACKGROUND** 4
**IV. OBJECTIONS TO DEFENDANT SUMMARY JUDGMENT EVIDENCE** 4
Summary Judgment based on Qualified Immunity 6
**VI. ARGUMENT AND AUTHORITY** 6
The Officers' use of force was objectively unreasonable and in violation of clearly established law. 6


1 Officer Smith was a misidentified as Herrera.

The Officers' Failure to Intervene Claim violated clearly established law 13
Defendants Wrongfully Arrested Plaintiff Without Probable Cause 15
The Law is Clearly Established since 2020 that Officers Cannot Meet Plaintiff's Serious Medical Needs with Deliberate Indifference 18
**VII. CONCLUSION AND PRAYER 19**
**CERTIFICATE OF SERVICE 20**

## TABLE OF AUTHORITIES



| **Cases** | **Page(s)** |
|---|---|
| *Allen v. Hays,* 63 F.4th 307 (5th Cir. 2023)........................................................ | 16 |
| *Alexander v. City of Round Rock* 854 F.3d 298 (5th Cir. Tex. April 18, 2017)............. | 18 |
| *Anderson v. Branen,* 17 F.3d 552 (2d Cir.1994)................................................ | 15 |
| *Bone v. Dunnaway*, 657 F. App'x 258 (5th Cir. 2016)........................................ | |
| *Bodzin v. City of Dallas,* 768 F.2d 722 (5th Cir. 1985)....................................... | 16 |
| *Bush v. Strain,* 513 F.3d 492 (5th Cir. 2008)...................................................... | 11 |
| *Brower v. County of Inyo,* 489 U.S. 593 (1989))................................................ | 16 |
| *Brown v. Lynch,* 524 F. App'x 69 (5th Cir. 2013))............................................ | 9 |
| *Carroll v. Ellington*, 800 F.3d 154 (5th Cir. 2015))............................................ | 16 |
| *Collier v. Montgomery,* 569 F.3d 214 (5th Cir. 2009))........................................ | 11 |
| *Cope v. Cogdill,* 3 F.4th 198(5th Cir. 2021))....................................................... | 19,20 |
| *Club Retro, L.L.C. v. Hilton,* 568 F.3d 181 (5th Cir. 2009)............................... | 11 |
| *Deville v. Marcantel,* 567 F.3d 156 (5th Cir. 2009)............................................ | 10 |
| *Domino v. Tex. Dep 't of Crim. Just.*, 239 F.3d 752 (5th Cir. 2001).................................. | 19 |
| *Dyer v. Houston,* 964 F.3d 374 (5th Cir. 2020)................................................... | 19 |

| | |
|---|---|
| *Florida v. Bostick,* 501 U.S. 429 S. Ct. 2382, 115 L. Ed. 2d 389 (1991)........................ | 17 |
| *Florida v. Royer,* 460 U.S. 491 S.Ct. 1319, 75 L.Ed.2d 229 (1983)................................ | 17 |
| *Flores v. City of Palacios,* 381 F.3d 391 (5th Cir. 2004)................................................... | 9 |
| *Freeman v. Gore,* 483 F.3d 404 (5th Cir. 2007)................................................................ | 18 |
| *Garza v. City of Donna,* 922 F.3d 626 (5th Cir. 2019).................................................... | 19 |
| *Graham v. Connor*, 490 U.S. 386 (1989)............................................................................ | 8 |
| *Goodson v. City of Corpus Christi,* 202 F.3d 730 (5th Cir. 2000)..................................... | 11 |
| *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995).................................................................. | 15 |
| *Hall v. Tawney*, 621 F.2d at 613 (4th Cir. 1980)............................................................ | 8 |
| *Hamilton v. Kindred,* 845 F.3d 659 (5th Cir. 2017)......................................................... | 14 |
| *Hiibel v. Sixth Judicial Dist. Court,* 542 U.S. 177 (2004) 124 S. Ct. 2451..................... | 17 |
| *Hogan v. Cunningham*, 722 F.3d 725 (5th Cir. 2013)...................................................... | 8 |
| *INS v. Delgado,* 466 U.S. 210 (1984) 104 S. Ct. 1758................................................... | 17 |
| *Jamieson v. Shaw*, 772 F.2d 1205 (5th Cir. 1985)............................................................ | 8 |
| *Johnson v. Glick,* 481 F.2d [1028] at 1033 [(2nd Cir. 1973).......................................... | 8 |
| *Massey v. Wharton,* 477 F. App'x 256 (5th Cir. 2012)..................................................... | 11 |
| *Mace v. City of Palestine,* 333 F.3d 621 (5th Cir. 2003)................................................... | 19 |
| *Newman v. Guedry,* 703 F.3d 757 (5th Cir. 2012)........................................................... | 9 |
| *Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012)................................................. | 11 |
| *Pratt v. Harris Cty.*, 822 F.3d 174 (5th Cir. 2016)........................................................... | 11 |
| *Ramirez v. Knoulton*, 542 F.3d 124 (5th Cir. 2008)......................................................... | 9 |
| *Reese v. Anderson,* 926 F.2d 494 (5th Cir. 1991)............................................................ | 7 |
| *Richie v. Wharton Cnty. Sheriff Dep't Star Team*, No. 12-20014, 2013 WL 616962, at *2 (5th Cir. Feb. 19, 2013)................................................................................................ | 15 |
| *Sanchez v. Young Cnty.,* 866 F.3d 274 (5th Cir. 2017)..................................................... | 19 |

| | |
|---|---|
| *Stroik v. Ponseti,* 35 F.3d 155(5th Cir.1994)........................................................ | 7 |
| *Terry v. Ohio,* 392 U.S. 1 (1968) 88 S. Ct. 1868........................................................ | 17 |
| *Tolan v. Cotton,* 573 F. App'x 330 (5th Cir.)........................................................ | 11 |
| *Turner v. Lieutenant Driver,* 848 F.3d 678 (5th Cir. 2017)............................................. | 16 |
| *United States v. Bengivenga*, 845 F.2d 593 (5th Cir. 1988)............................................. | 18 |
| *United States v. Corral-Franco,* 848 F.2d 536 (5th Cir. 1988).......................................... | 18 |
| *United States v. Hill* 752 F.3d 1029 (5th Cir. Miss.May 29, 2014)................................ | 18 |
| *United States v. Mask,* 330 F.3d 330 (5th Cir. 2003)..................................................... | 17 |
| *United States v. Mendenhall,* 446 U.S. 544 S. Ct. 1870, 64 L. Ed. 2d 497 (1980) | 16 |
| *United States v. Sanders*, 994 F.2d 200 (5th Cir. 1993).................................................... | 16 |
| *United States v. Valadez*, 267 F.3d 395 (5th Cir. 2001).................................................... | 17 |
| *Wagner v. Bay City,* 227 F.3d 316 (5th Cir. 2000).......................................................... | 19 |
| *Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013)............................................................ | 14 |
| *Williams v. Bramer,* 180 F.3d 699 (5th Cir. 1999) ......................................................... | 9 |


## IV. OBJECTIONS TO DEFENDANT SUMMARY JUDGMENT EVIDENCE

In this *Motion for Summary Judgment*, Defendants rely upon the following evidence and plaintiff objects as follows:

| EXHIBITS | OBJECTIONS |
|---|---|
| Exhibit 1: Officer Ballard's Body Worn Camera Video 1 | No objections |
| Exhibit 2: Officer Ballard's Body Worn Camera Video 2 | No objections |
| Exhibit 3: EMS personnel's Body Worn Camera Video | No objections |
| Exhibit 4: Officer Ballard's Patrol Car Camera Video | No objections |

| | |
|---|---|
| Exhibit 5: Officer Allen's Body Worn Camera Video 1 | No objections |
| Exhibit 6: Officer Allen's Body Worn Camera Video 2 | No objections |
| Exhibit 7: Officer Allen's Body Worn Camera Video 3 | No objections |
| Exhibit 8: Officer Balerio's Body Worn Camera Video 1 | No objections |
| Exhibit 9: Officer Balerio's Body Worn Camera Video 2 | No objections |
| Exhibit 10: Officer Balerio's Body Worn Camera Video 3 | No objections |
| Exhibit 11: Officer J. Smith's Body Worn Camera Video | No objections |
| Exhibit 12: 911 Call to Dispatch for Incident | Relevance |
| Exhibit 13: Affidavit of Officer Ballard | Hearsay, no personal knowledge to statements offered in the affidavit |
| Exhibit 14: Affidavit of Officer Allen | Hearsay, no personal knowledge to statements offered in the affidavit |
| Exhibit 15: Affidavit of Officer Balerio | Hearsay, no personal knowledge to statements offered in the affidavit |

**PLAINTIFF'S SUMMARY JUDGMENT EXHIBITS**

| EXHIBITS | DESCRIPTION |
|---|---|
| Exhibit A | Declaration of Johnny Moreno |
| Exhibit B | Declaration of Jennifer Sandejo |
| Exhibit C | Medical Records |
| Exhibit D | Body Worn Camera Footage Link |

## V. LEGAL STANDARD

***Summary Judgment based on Qualified Immunity***

The court applies a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity. First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights.*Tarver v. City of Edna,* 410 F.3d 745, 750 (5th Cir. 2005); *McClendon v. City of Columbia,* 305 F.3d 314, 322-23 (5th Cir. 2002) (en banc); *Glenn v. City of Tyler,* 242 F.3d 307, 312 (5th Cir. 2001)

## VI. ARGUMENT AND AUTHORITY

***The Officers' use of force was objectively unreasonable and in violation of clearly established law.***

An excessive force complaint under § 1983 brought by a free citizen must be analyzed according to Fourth Amendment standards. See *Stroik v. Ponseti,* 35 F.3d 155, 157 (5th Cir.1994), cert. denied, 514 U.S. 1064, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995); *Reese v. Anderson,* 926 F.2d 494, 500 (5th Cir. 1991). The Fourth Amendment, applied to state actors through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment encompasses both constitutional protections that Mr. Moreno has shown have been violated.

In determining whether the state officer has crossed the constitutional line that would make the physical abuse actionable under Section 1983, we must inquire into the amount of force used in relation to the need presented, the extent of the injury inflicted, and the motives of the state officer. If the state officer's action caused severe injuries, was grossly

disproportionate to the need for action under the circumstances, and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983. *Hall v. Tawney*, 621 F.2d at 613; *Johnson v. Glick,* 481 F.2d [1028] at 1033 [(2nd Cir. 1973)].*Jamieson v. Shaw*, 772 F.2d 1205, 1210 (5th Cir. 1985).

After Mr. Moreno submitted himself to show he was not a threat the officers restrained Mr. Moreno, Defendant Allen grabbed, tripped, and shoved Mr. Moreno, then slammed him against the squad car, then began to squeeze his neck from behind. Officer Balerio decided to join Allen and and push Mr. Moreno against the squad car and grab his neck although he had had the opportunity to intervene and stop Allen from grabbing and squeezing Mr. Moreno's neck and slamming him against the squad car then to the ground.. Once on the ground, Officer _____ placed his body weight on Mr. Moreno as he kneeled on Mr. Moreno's neck. Mr. Moreno was not resisting, and placed his hands behind his back. The officers became aggressive when there was no force necessary to effectuate the detainment. He was not attempting to flee or avoid detainment. Mr. Moreno was already detained and was not a threat to officers or others.

The Supreme Court has instructed that courts determining the objective reasonableness of force must consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

In *Bone*, the Plaintiff claimed that the officer, defendant Jones, violated her Fourth Amendment right to be free from excessive force. The right to be free from excessive force is

clearly established, but the reasonable degree of force varies based on the totality of the circumstances. See *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013). "'To gauge the objective reasonableness of the force used by a law enforcement officer, we must balance the amount of force used against the need for force,' paying 'careful attention to the facts and circumstances of each particular case.'" *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (quoting *Flores*, 381 F.3d at 399). Bone's allegation of injury could be characterized as de minimis—bruising and a swollen cheek—whether an injury is cognizable depends on the reasonableness of the force, not just the extent of injury. See *Freeman*, 483 F.3d at 416-17; see also *Williams v. Bramer,* 180 F.3d 699, 704 (5th Cir. 1999) ("What constitutes an injury in an excessive force claim is therefore subjective—it is defined entirely by the context in which the injury arises."); *Brown v. Lynch,* 524 F. App'x 69, 79 (5th Cir. 2013) ("Any force found to be objectively unreasonable necessarily exceeds the de minimis threshold…" (footnote omitted)). At the very least, there is a fact question about the degree of injury. Therefore, we must determine the reasonableness of Jones's force.

The Fifth Circuit court has said that "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force." *Freeman*, 483 F.3d at 417. Bone has alleged injuries that resulted from conduct that exceeded the use of handcuffs…To withstand Jones's motion for summary judgment, Bone must show that a genuine dispute of material fact exists as to whether: (1) Jones's use of force violated Bone's Fourth Amendment right to be free from excessive force; and (2) Jones's use of force was objectively unreasonable in light of then clearly established law. *Newman v. Guedry,* 703 F.3d 757, 766 (5th Cir. 2012). Jones does not make much of an attempt to meet the first prong, perhaps because, considering the evidence

in the light most favorable to Bone, none of the Graham factors favor Jones in this case. See *Graham*, 490 U.S. at 396.

Perhaps, Jones also does not seek to justify Bone's version of events because, in his version, the "wrist grab" was to stop Bone from fleeing, and the "slam" was accidental. Bone's alleged crime was very minimal, and there is no evidence that she was a threat to the safety of others or even perceived as such. See *id.* Although the district court concluded that it was reasonable for Jones to believe Bone was "attempting to evade arrest by flight," this conclusion is based on Jones's version of the facts. Bone has shown a genuine dispute of fact as to both whether the officers were attempting to arrest her at the time she turned around and whether the refusal to sign and turning around constituted "flight." Bone testified that she was not told she was under arrest before she turned away from the officers and that the "slam against the window" took place immediately after she turned away. Considering the facts in the light most favorable to Bone, there is a genuine dispute of material fact as to whether Bone was evading arrest when Jones acted. Hence, there is a genuine dispute as to whether any Graham factor justified Jones's use of force, and therefore, whether Jones's force violated Bone's constitutional rights. Turning to the question of "clearly established law," this same factual dispute prevents us from answering the question in Jones's favor at summary judgment. Given that this case does not involve a serious crime, any perception that the suspect posed a risk of injury to anyone or any active physical "resistance," the only possible justification for the use of force was Jones's perception that Bone was "fleeing" at the time of the use of force (and his argument that the "slam" was accidental). We have distinguished, for purposes of qualified immunity, cases in which officers face verbal resistance but no fleeing suspect, from those in which officers face some form of verbal or physical resistance and a

fleeing suspect. In the former cases, we have denied qualified immunity at the summary judgment stage. See *Deville v. Marcantel,* 567 F.3d 156, 169 (5th Cir. 2009) (rejecting summary judgment on qualified immunity grounds where an individual was stopped for a minor traffic offense, did not attempt to flee, and did not engage in active resistance); *Bush v. Strain,* 513 F.3d 492, 502 (5th Cir. 2008) (rejecting qualified immunity where an individual was not resisting arrest or attempting to flee); *Goodson v. City of Corpus Christi,* 202 F.3d 730, 734, 740 (5th Cir. 2000) (finding a fact issue precluded summary judgment on qualified immunity grounds where officers tackled an individual who pulled his arm away during arrest attempt, but was not fleeing); see also *Massey v. Wharton,* 477 F. App'x 256, 263 (5th Cir. 2012) (rejecting qualified immunity where an individual was arrested for disorderly conduct, was not a threat to officers, and was not attempting to flee). In the latter cases, we have affirmed grants of qualified immunity. See *Pratt v. Harris Cty.*, 822 F.3d 174, 182-85 (5th Cir. 2016) (affirming grant of qualified immunity where suspect physically resisted officers' commands and initially attempted to flee); *Poole v. City of Shreveport*, 691 F.3d 624, 629, 631 & n.5 (5th Cir. 2012) (same); *Collier v. Montgomery,* 569 F.3d 214, 219 (5th Cir. 2009) (same).

The burden is on Bone to show that it was clearly established at the time of her arrest that Jones's use of force was unconstitutional. See *Club Retro,* 568 F.3d at 194 ("When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense."). This distinction also drove the outcome for one plaintiff in *Tolan v. Cotton,* 573 F. App'x 330, 330 (5th Cir.) (no qualified immunity where officers shot suspect who was neither physically resisting officers nor attempting to flee), on remand from 134 S. Ct. 1861 (2014), while resulting in a different outcome for his mother, see *Tolan v. Cotton*, 713 F.3d 299, 308 (5th Cir. 2013) (holding that officer's "grabbing [the plaintiff's] arm

and shoving her against the garage door" after she refused to comply with verbal commands to facilitate a search was not unconstitutional under clearly established law), vacated on other grounds, 134 S. Ct. 1861 (2014), aff'd in relevant part, 573 F. App'x 330, 331 (2014) ("It goes without saying that all other [than the son's] dismissals…are not affected by [the Supreme Court's] holding."). The Supreme Court concluded that the Fifth Circuit improperly failed to credit the son's evidence and remanded for consideration whether the officer's actions violated clearly established law. *Tolan*, 134 S. Ct. at 1868. On remand, the Fifth Circuit held that a genuine dispute of material fact existed that precluded qualified immunity at summary judgment for the son's excessive force claim. *Tolan*, 573 F. App'x at 330. His mother's claim was not considered by the Supreme Court.

These cases define parameters for officers like Jones. Under his version of the facts, Bone had resisted verbal commands to come back and submit to an arrest and was attempting to flee (and the "slam" was accidental), which is arguably within the parameters of the cases in which we have granted qualified immunity. On the other hand, if Bone's version of the events is true, there was no verbal command that she stops, no arrest, and no flight, and Jones's degree of force was clearly prohibited under our precedent. Given this factual dispute, which turns on the credibility of Jones and Bone, we cannot resolve the qualified immunity question as a matter of law. Accordingly, we conclude that Jones is not entitled to summary judgment on qualified immunity grounds. See *Newman*, 703 F.3d at 766.

Here, just as in *Jones*, the officers' versions of events are disputed by Mr. Moreno and body camera footage. Ex. A. Def. Ex. 1-11

Even if the court construed Mr. Moreno's response as passive resistance, that would not justify the officers' immediate use of physical force. Mr. Moreno alleges that Officer Allen

"grabbed him by the neck and slammed him against the squad car then to the ground" causing his ear to bleed while Officers Bellrio, and Ballard assisted. In his declaration, Mr. Moreno stated "Balerio then spun me around and slammed me on the ground along with the other officers and Allen landed with his hand on the back of my neck, in which I was unable to protect my fall due to me being in restraints, they had already put on me with no resistance while I exited the vehicle in which my wife and I were in as soon as the cops arrived. After the fall, officer Allen still had his hand on the back of my neck. Balerio, then put pressure with his forearm on my upper back area. When I informed them of my neck injury, Allen kept his hand firmly pressed on my neck, and I proceeded to once again tell them about the injury caused to my neck." Ex. A. The body-worn camera footage does not clearly contradict Mr. Moreno's allegations. See *Def. Exhibits* 1-7. In a similar case in which law enforcement hit the plaintiff once during a traffic stop in response to passive resistance, the court held that "a reasonable officer on the scene would have known that suddenly resorting to physical force as Officer Rogers did would be clearly excessive and clearly unreasonable." *Hanks v. Rogers,* 853 F.3d 738, 745 (5th Cir. 2017). In *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008), the Fifth Circuit found that officers were not entitled to qualified immunity when they "forcefully slam[med] [the plaintiff's] face into a vehicle while she was restrained" in handcuffs. *Id.* at 501–02. The body-worn camera footage shows that officers Bellerio, Ballard, and Allen forcefully slammed Mr. Moreno's face into a vehicle while Mr. Moreno was physically restrained with handcuffs. He did not physically or verbally threaten the officers or others and did not attempt to flee.

The officers here had sufficient notice that slamming a handcuffed Mr. Moreno against the squad car and to the ground constituted excessive force and a violation of Mr.

Moreno's constitutional rights. *Aguirre v. City of San Antonio*, 995 F.3d 395, 415 (5th Cir. 2021) (internal quotation marks and citations omitted) ("The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."). Mr. Moreno has pleaded facts that, if proven, may show that the force used was unreasonably excessive so that Officers Allen, Ballard, and Ballerio would not be entitled to qualified immunity.

**The Officers' Failure to Intervene Claim violated clearly established law**

The Fifth Circuit recognizes that an officer may be liable under § 1983 pursuant to a theory of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citations omitted). Bystander liability merely requires that the defendant knows that a fellow officer is violating an individual's constitutional rights, but chooses not to act despite a reasonable opportunity to prevent the harm. *Whitley*, 726 F.3d at 646.

If the force used by only some officers was unreasonable then the other officer's failure to intervene. Video evidence clearly shows that Officer Smith, and Bellrio stood by and did nothing to intervene although had the ability to do so as the other officer, Bellrio, and Allen used unreasonable force, "when Allen jerked and twisted my arm." Ex.D-Def. Ex.5, Ex.8, A. In fact, Office Bellrio chose to join in instead of intervening. See. Ex. A, and Def.

Exhibits Ex. 1,Ex. 5, Ex. 8. These facts establish all elements of bystander [*27] liability. *Whitley*, 726 F.3d at 646; *Hamilton*, 845 F.3d at 663.

In *Whitley*, the Fifth Circuit recognized that the bystander liability theory it adopted in *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995) is not limited to excessive force claims, but applies to other constitutional violations as well: Although *Hale* most often applies in the context of excessive force claims, other constitutional violations also may support a theory of bystander liability. See *Richie v. Wharton Cnty. Sheriff Dep't Star Tea*m, No. 12-20014, 2013 WL 616962, at *2 (5th Cir. Feb. 19, 2013) (per curiam) (unpublished) (noting that plaintiff failed to allege facts suggesting that [*27] officers "were liable under a theory of bystander liability for failing to prevent ... other member[s] from committing constitutional violations"); accord *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994) ("[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.") *Whitley v. Hanna,* 726 F.3d 631, 646 n. 11 (5th Cir. 2013). In stating the requirements for bystander liability, the opinion uses the phrase "violating an individual's constitutional rights," rather than "excessive force," precisely because the court intends for bystander liability to apply to all unconstitutional acts, rather than only excessive force. Thus, since at least 2013, officers have been on notice that they may not stand idly by when witnessing a clearly established constitutional violation, when they have the ability to intercede and prevent the violation from occurring.

Therefore, neither Officers Ballard nor Bellerio are not entitled to qualified immunity and the motion for summary judgment based on his failure to intervene and protect Mr. Moreno from the unlawful use of force by officer Allen prior to joining in.

**Defendants Wrongfully Arrested Plaintiff Without Probable Cause**

A seizure is an arrest if "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Turner v. Lieutenant Driver,* 848 F.3d 678, 692-93 (5th Cir. 2017) (quoting *Carroll v. Ellington*, 800 F.3d 154, 170 (5th Cir. 2015)). But "[u]sing some force on a suspect, pointing a weapon at a suspect, ordering a suspect to lie on the ground, and handcuffing a suspect…do not automatically convert an investigatory detention into an arrest requiring probable cause." *Id.* (quoting *United States v. Sanders*, 994 F.2d 200, 206 (5th Cir. 1993)). To determine whether an investigatory detention has risen to the level of an arrest, "[t]he court must determine case by case whether the police were unreasonable in failing to use less intrusive procedures to conduct their investigation safely." *Sanders,* 994 F.2d at 206-07. *Allen v. Hays,* 63 F.4th 307, 317 (5th Cir. 2023).

The Fourth Amendment prohibits government officials from making "unreasonable . . . seizures." U.S. Const. amend. IV. A warrantless arrest violates that Fourth Amendment right "if the arresting officer lacks probable cause to believe that the suspect has committed a crime." *Bodzin v. City of Dallas,* 768 F.2d 722, 724 (5th Cir. 1985). An officer "seizes" a person for purposes of the Fourth Amendment when he "restrains the freedom of a person to walk away." *Brower v. Cnty. of Inyo,* 489 U.S. 593, 109 S. Ct. 1378, 1380, 103 L. Ed. 2d 628 (1989).

The Supreme Court has held that "[a] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980), or alternatively, if a

reasonable person would not feel free "to decline the officer's requests or otherwise terminate the encounter," *Florida v. Bostick,* 501 U.S. 429, 436, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991).

A seizure is unlawful under the Fourth Amendment, specifically for unlawful detainment, if specific and articulable facts to support a detention, or probable cause exist. Under the Terry standard, "a two-tiered reasonable suspicion inquiry: 1) whether the officer's action was justified at its inception, and 2) whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place." *United States v. Valadez*, 267 F.3d 395, 397-98 (5th Cir. 2001) (citing, inter alia, *Terry v. Ohio,* 392 U.S. 1, 19-20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Then, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.* (quoting *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). Under this standard, if Hayes thought Allen was committing a traffic violation, then the first prong of Terry would be satisfied. *Allen v. Hays*, 63 F.4th 307, 316 (5th Cir. 2023). The officers never articulated that they believed that Mr. Moreno was committing a crime.

A "seizure" under the Fourth Amendment must be "justified at its inception," we must determine when Hill was seized within the meaning of the amendment. *Hiibel v. Sixth Judicial Dist. Court,* 542 U.S. 177, 185, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004). [**10] A seizure begins when "all the circumstances surrounding the incident" are such that "a reasonable person would have believed that he was not free to leave" *INS v. Delgado,* 466 U.S. 210, 215, 104 S. Ct. 1758, 80 L. Ed. 2d 247 (1984) (citation omitted); *United States v. Mask,* 330 F.3d 330, 336 (5th Cir. 2003). Plaintiff stated a Fourth Amendment claim here, based on the

facts alleged, officers did not have probable cause to arrest plaintiff for resisting a search under Tex. Penal Code § 38.03(a), and because no objectively reasonable officer would conclude that such probable cause did exist. Officers' use of force was objectively unreasonable. *Alexander v. City of Round Rock* 854 F.3d 298 (5th Cir. Tex. April 18, 2017). Seizure of defendant, who was sitting in a parked car outside an apartment complex, violated the Fourth Amendment; when a police officer ordered defendant out of the car to be frisked, the officer's suspicion that defendant was, or was about to be, engaged in a drug crime was not reasonable. *United States v. Hill* 752 F.3d 1029 (5th Cir. Miss.May 29, 2014). The Fifth circuit in *Freeman v. Gore* held "Police detention constitutes an 'arrest,' such that it must be accompanied by probable cause, if a reasonable person in the suspect's position would understand [**17] the situation to be a restraint on freedom of the kind that the law typically associates with a formal arrest. See *United States v. Corral-Franco,* 848 F.2d 536, 540-41 (5th Cir. 1988); *United States v. Bengivenga*, 845 F.2d 593, 596-97 (5th Cir. 1988) (en banc). *Freeman v. Gore,* 483 F.3d 404, 413.

Accordingly, specific and articulable facts demonstrating that a crime has been or will be committed to justify the arrest of Mr. Moreno is lacking. The absence of such facts concerning Mr. Moreno makes it evident that his Fourth Amendment rights were violated when he was seized and unlawfully arrested by Officers Allen, Smith, Ballerio, and Ballard. Given that the law was clearly established that all arrests must be supported by probable cause at the relevant time, Officers Allen, Smith, Ballerio, and Ballard are not entitled to qualified immunity for the unlawful detention and arrest of Mr. Moreno.

**<u>The Law is Clearly Established since 2020 that Officers Cannot Meet Plaintiff's Serious Medical Needs with Deliberate Indifference</u>**

The defendants were fully aware that Mr. Moreno's neck was injured because he immediately complained and they caused the injury, he immediately advised officers that his neck was injured and he believed it was broken. Despite this knowledge no officer provided any medical care. Ex. A, C, Def. Ex. 1-11

The Fourteenth Amendment "right of a pretrial detainee to medical care… is violated if an officer acts with deliberate indifference to a substantial risk of serious medical harm and resulting injuries" *Mace v. City of Palestine,* 333 F.3d 621, 625 (5th Cir. 2003) (citing *Wagner v. Bay City,* 227 F.3d 316, 324 (5th Cir. 2000)). Though *Mace* held that "[t]he officer must have the subjective intent to cause harm," *Id.* at 626, subsequent Fifth Circuit decisions have refined Mace based on earlier cases and have rejected the subjective-intent requirement, generally requiring plaintiff to show only that defendants "were [1] aware of facts from which an inference of a substantial risk of serious harm to an individual could be drawn" and "[2] that they actually drew the inference" *Garza v. City of Donna,* 922 F.3d 626, 634 (5th Cir. 2019) (citing *Sanchez v. Young Cnty.,* 866 F.3d 274, 280 (5th Cir. 2017)); see also *Dyer v. Houston,* 964 F.3d 374, 380 (5th Cir. 2020). Even under that standard, however, deliberate indifference remains "an extremely high standard to meet" *Dyer*, 964 F.3d at 380 (quoting *Domino v. Tex. Dep 't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001)). This Court put all officers on notice that promptly failing to call for emergency assistance when a detainee faces a known, serious medical emergency . . . constitutes unconstitutional conduct in *Cope v Cogdill,*. In that case a jailer "watch[ed] an inmate attempt suicide and fail[ed] to call for 36 emergency medical

assistance" *Cope v. Cogdill,* 3 F.4th 198, 209(5th Cir. 2021), cert denied, — U.S. —, 142 S.Ct. 2573, 213 L.Ed.2d 1123 (2022). Instead, the jailer called his supervisor, who arrived at the jail approximately 10 minutes after receiving the jailer's call and then called 911. *Id.* at 203, 209. The court held that even though the jailer immediately called his supervisor, he should have known to call emergency assistance. The court stated, "[W]e now make clear that promptly failing to call for emergency assistance when a detainee faces a known, serious medical emergency . . . constitutes unconstitutional conduct" *Id.* at 209.

Officers, Allen, Smith, Ballard, and Ballerio all failed to provide medical care. Each officer was aware that Mr. Moreno was injured and complained of pain. No officer provided any medical care, even minimal care of removing handcuffs, since he was not committing a crime, or providing first aid. Ex. A,C, Def. Ex. 1,5,8.

Summary judgment on qualified immunity unwarranted based on the undisputed facts. Mr. Moreno was helping his wife, Jennifer Sandejo, who was having a panic attack. Mr. Moreno was trying to help Ms. Sandejo to calm down and make sure she was okay. Ex. A&B She was having a panic attack due to unrelated circumstances that occurred weeks before this encounter.Ex. A&B

Mr. Moreno has been the only one looking out for her welfare and trying to protect her when he was confronted by two men.*Id.* Mr. Moreno expected law enforcement to look for and question the men but they did not.*Id.* Officer Ballard and Officer Balerio approached Mr. Moreno as he was exiting the vehicle and immediately placed his hands behind his back to allow the officers to place him in restraints without resistance. Ex. A. Mr. Moreno made no attempts to resist the arrest and was not a threat of harm to the officers or others around

him.*Id*.. While Mr. Moreno was already walking to the Patrol Unit, Officer Allan joined Balerio and pulled him towards the squad car, and slammed against the car, then threw Mr. Moreno on the ground. Ex. A

He landed on his neck area. The ground further struck his upper right chest and shoulder area. Once on the ground he immediately began to feel pain in his neck, his arm went numb, fingers began to tingle.*Id.* Ex. D He believed the officers broke his neck due to his severe pain and inability to move his neck. Ex. A

Mr. Moreno was never a threat of harm to the officers or anyone else to warrant the unreasonable use of force against him. Ex.D

No officer acted to prevent the harm against Mr. Moreno although there was a reasonable opportunity, as Ballard, and Bellrio were next to Mr. Moreno when Allen initially slammed into the car and Ballard remained when Bellerio and Allen slammed Mr. Moreno to the ground and placed their upper body weight on his back and neck area. Ex.D No officer intervened to prevent the harm Mr. Moreno suffered. Ex. D Each was aware that their fellow officer was violating Mr. Moreno's constitutional rights. Mr. Moreno begged for medical assistance. EMS arrived but were aggressive and unhelpful to him, he did not feel safe, and he elected to have his girlfriend take him to the emergency room instead. Ex. A Mr. Moreno presented to the hospital with his left ear bleeding and severe neck pain After imaging and testing it was later determined that the officers fractured Mr. Moreno's neck, C-6. Ex. C. He was admitted but had to be transported to another hospital for surgery. Ex. A,B,C

.

## VII. CONCLUSION AND PRAYER

Plaintiff, Johnny Moreno has established that Officers, Allen, Smith, Ballard, and Ballerio violated Mr. Moreno's constitutional right to be free from unlawful arrest, excessive force, and to be provided medical care for a serious medical need and not be met with deliberate indifference and are not entitled to qualified immunity. Plaintiff prays that the Court **denies** Defendants' Motion for Summary Judgment on qualified immunity for the unlawful detention of excessive force, or denial of medical care for his serious medical need and for such other and further relief to which they may be justly entitled.

Respectfully submitted,
THE LEWIS LAW GROUP PLLC.
By:/s/ U.A. Lewis
U.A. Lewis
State Bar No. 24076511
P. O. Box 27353
Houston, TX 77227
Telephone: (713)570-6555
Facsimile: (713) 581-1017
Email:myattorneyatlaw@gmail.com
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that on July 12, 2024, I served a true and correct copy of the proceeding Motion to Summary Judgment to all parties or counsel of record.

**/s/ U.A. Lewis**
**U.A. Lewis**