**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **JOHHNY MORENO,** | § | |
| | § | |
| **Plaintiff** | § | |
| **VS.** | § | **CIVIL ACTION NO. 6:23-cv-00026** |
| | § | |
| **CITY OF VICTORIA, ET AL.** | § | **JURY DEMAND** |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS TRENTON BALLARD, ROYALL ALLEN, ROGER BELARIO AND TAYLOR HERRERA'SREPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Defendants, Trenton Ballard ("Officer Ballard"), Royall Allen ("Officer Allen"), Roger Belario ("Officer Belario") and Taylor Herrera ("Officer Herrera"), and file this, their Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment,[1] and in support hereof would show the Court as follows:

## I. Plaintiff's Self-Portrait Is Contradicted by the Video Evidence

1. Throughout his response, Plaintiff attempts to paint a portrait of himself as a passive, non-threatening participant in his encounter with the Officers. The Court is not required to give his editorial glosses any weight. The video evidence clearly conveys his resistive, aggressive and non-complaint behavior. This evidence allows the Court to see a more accurate illustration of his conduct. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (holding courts need not accept a party's description of facts where it is blatantly contradicted by video evidence). Any argument/testimony presented by Plaintiff which contradicts the hard record should not be

[1] Plaintiff's motion also contained objections in the appendices, to which Defendants will respond under separate cover. Defendants will also file their own objections to Plaintiff's summary judgment evidence under separate cover.

considered, much less, adopted by this Honorable Court. *Id*. The hard record establishes that in the middle of the afternoon on April 20, 2021, the Victoria Police Department received a 911 call that a Hispanic male in a white muscle shirt and black pants was beating a female in a parking lot—a major crime involving physical violence.[2] While enroute the Officers were advised of the nature of the crime.[3] When Officer Ballard arrived and approached the passenger side of the vehicle, Plaintiff complied with his request to step out of the vehicle.[4] When Plaintiff exited the vehicle, he put his hands behind his back and asked to be placed in handcuffs.[5] Officer Ballard placed Plaintiff in handcuffs and removed a knife from Plaintiff's front pocket.[6] This was the only time Plaintiff was compliant and not resisting until he was subdued in the grass on the side of the street.

2. Shortly after putting handcuffs on Plaintiff, Officer Ballard began to escort Plaintiff to his patrol vehicle.[7] While doing so, Plaintiff pulled away from Officer Ballard's control.[8] Officer Allen then assisted to gain control and compliance from Plaintiff.[9] He held onto Plaintiff's left wrist and attempted to escort him back to the patrol vehicle.[10] During this time, Officer Balerio was instructing Plaintiff to calm down and comply with the Officers.[11] While being escorted to the patrol vehicle, Plaintiff attempted to stop and turn away from the patrol vehicle.[12] In order to gain control and compliance from Plaintiff, the Officers turned Plaintiff back around and attempted

---

[2] D.E. 42, Ex. 12.
[3] D.E., 42, Ex. 13, 14 & 15.
[4] *Id*.
[5] D.E. 42, Ex. 1, 4, 8 & 13.
[6] D.E. 42, Ex. 1 at :50 – 1:00.
[7] D.E. 42, Ex. 1 & 4.
[8] D.E. 42, Ex. 1, 4, 5, 8, 13, 14 & 15.
[9] *Id*.
[10] *Id*.
[11] D.E. 42, Ex. 8.
[12] D.E. 42, Ex. 1, 4, 5, 8, 13, 14 & 15.

to push Plaintiff's chest against the patrol vehicle.[13] While attempting to gain control of Plaintiff by placing him against the patrol vehicle, Plaintiff was actively resisting and pushed his foot against the patrol vehicle in an attempt to prevent the Officers from gaining control.[14] In a further attempt to gain control of and compliance from Plaintiff, Officer Allen and Officer Balerio turned Plaintiff away from the patrol vehicle and put him on the ground in a grassy area next to the street.[15] Plaintiff's head did not touch concrete or asphalt in the process.[16] Once on the ground, Plaintiff stopped actively resisting.[17] During the entire interaction with Plaintiff, Plaintiff continuously cussed at the Officers.[18] Also, from the time Plaintiff was placed in handcuffs until he was escorted to the ground and stops resisting, approximately forty (40) seconds elapses.[19]

3. The body worn cameras of Officer Ballard, Officer Balerio, Officer Allen and Officer Smith, the patrol vehicle camera of Officer Ballard and the body worn camera of EMS personnel captured the incident on video, so that there is no dispute regarding the incident facts. The records capture that throughout the whole incident, the sounds of an aggressive, noncompliant, belligerent and actively resistant Plaintiff can be heard. Any argument that Plaintiff was acting passively or only offering a form of verbal resistance during this entire incident should not be considered by the Court as the video evidence contradicts that argument. Although there was an initial period of compliance, when taking the situation as a whole, the hard record conclusively establishes that Plaintiff was actively resisting and acting in an aggressive, noncompliant and belligerent manner.

---

[13] D.E. 42, Ex. 1, 4, 5, 8, 13, 14 & 15.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] D.E. 42, Ex. 1, 5 & 8.
[19] D.E. 42, Ex. 1, 4, 5 & 8.

4. As such, statements made in Plaintiff's response to the motion for summary judgment or in the declarations of Plaintiff and his wife Ms. Sandejo that contradict the hard record in that of the video recordings should not be considered.

**II. Use of Force Focuses on the Officers' Perceptions**

5. The next error Plaintiff makes in his response is reciting the events of this incident from his own point of view and the point of view of his wife Ms. Sandejo. The United States Supreme Court has made it very clear that use of force is analyzed from the perspective of a reasonable officer on the scene, not the subjective viewpoint of the person upon whom force was used. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). Accordingly, when Plaintiff relates his, or his wife's, version of this incident, it is irrelevant. The Officers were not privy to their side of the story as they approached the scene. The only information they had was that a man matching Plaintiff's description in Plaintiff's location was beating a woman. This was the information the Officers had as they arrived on scene. The Officers were trying to sort out what occurred when they arrived on the scene. Had Plaintiff not of started to resist and become aggressive and belligerent, the Officers would have been able to do their job and, if it were determined that Plaintiff had not of beat his wife and Ms. Sendejo was not in fear of him, he would not have been released after the Officers conducted their investigation. However, as the competent summary judgment evidence conclusively establishes, Plaintiff began to act in an aggressive and belligerent manner and failed to comply with the Officers commands all the while actively resisting the Officers attempts to gain control of him. Given Plaintiff's actions, a reasonable officer standing in the Officers' shoes could have believed Plaintiff posed a threat of harm, was belligerent, verbally aggressive and actively resisted. In addition, a reasonable officer could have believed going hands-on with Plaintiff to control the situation was lawful in light of the totality of the circumstances

surrounding this incident. Plaintiff has no evidence to the contrary. As such, at the very least, the Officers are entitled to qualified immunity.

## III. Plaintiff Fails to Meet His Burden on Qualified Immunity

**Excessive Force**

6. Plaintiff's response fails to identify a case that establishes the Officers violated clearly established law. "A qualified immunity defense alters the usual summary judgment burden of proof. Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Vann v. City of Southaven*, 884 F.3d 307, 309 (5th Cir. Mar. 5, 2018). "It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" *Id.* at 310 (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732–33 (5th Cir. 2016)). Plaintiff failed to meet that burden here.

7. Although Plaintiff cited to a few cases in his response that analyze general propositions of excessive force and qualified immunity law, none of them dealt with a situation similar to the facts of this case. Nor did he try to analyze any of them in a manner to address how the facts of those cases are similar to the ones presented here. The Officers generally agree with the general statement of the law in those case, but that is not the relevant analysis as citing a case at such a high level of generality fails to satisfy Plaintiff's burden. *See Vann*, 884 F.3d at 309–10; *Cass*, 814 F.3d at 732–33.

8. Additionally, Plaintiff fails to explain how the Officers' actions amounted to a disproportionate escalation in response to his own conduct. Officer Ballard was calmly handling the situation while the other Officers arrived in a calm manner; however, it was Plaintiff's conduct that caused the situation to warrant the Officers go hands on and take Plaintiff to the ground to

gain control of the situation. The Officers here used only the force necessary to gain control of Plaintiff and stopped using any force once Plaintiff was under control. Plaintiff was acting in a belligerent, aggressive and noncompliant manner while resisting the Officers' attempts to gain control of him. See, *Trammell v. Fruge*, 868 F.3d 332, n. 9 (2017) ("[I]t is reasonable for an officer to attempt to grab a noncompliant suspect's arm in an attempt to handcuff the suspect…." The case involved public intoxication.). Simply put, finding that a Fourth Amendment violation occurred in this case is not "beyond debate." *Hanks v. Rogers*, 853 F.3d 738, 746–47 (5th Cir. 2017) (quoting *White v. Pauly*, — U.S. —, 137 S.Ct. 548, 551 (2017) (per curiam)). In addition, a reasonable officer could have believed that the actions of the Officers were reasonable, lawful, and justified under the circumstances. As such, the law is not clearly established.

9. The Fifth Circuit has sanctioned not only the use of similar force but also the use of greater force against a suspect. In *Robles v. Ciarletta*, 797 F. App'x 821, 827–28 (5th Cir. 2019) (per curiam) the Fifth Circuit affirmed this Court's holding that, although assault suspect "only passively resisted" arrest, arresting officer did not violate clearly established law by putting suspect's arm behind back, pressing him against a fence, and ultimately taking him to the ground. In *Griggs v. Brewer*, an officer stopped a vehicle that had run a red light, smelled alcohol, and conducted a field sobriety test. 841 F.3d 308, 311 (5th Cir. 2016). During the "one legged stand" part of the test, Officer Brewer told the driver, Griggs, that he could stop. *Id.* "Griggs did not stop and responded 'I'm doing it.' Brewer retorted 'you're not actually,' told him to 'put your hands behind your back,' and grabbed Griggs's hands to handcuff him. Griggs lurched to the side and said 'no, no.'" *Id.* In response to this movement, "Brewer immediately placed Griggs in a choke hold, swept his legs out from under him, and body-slammed him onto the nearby grass." *Griggs*, 841 F.3d at 313. Brewer then punched Griggs with a closed fist to the back of the head several

times to gain control of his hands in order to handcuff him. *Id.* at 311, 315. This Court held that neither the takedown nor the punching was constitutionally unreasonable under the circumstances. *Id.* at 314–15.

10. In *Kellough v. Bertrand*, officers stopped a medical student on his way home from campus because they mistakenly believed he matched the description of an armed robber. 22 F. Supp. 2d 602, 605–06 (S.D. Tex. 1998). When the student stepped out of his vehicle, one of the officers ordered him to lie face-down on the ground. *Id.* at 606. When the student, who was himself a former police officer, asked what he had done instead of immediately complying with the order to lie down, the officers swept his legs out from under him, knocked him to the ground, forced his hands behind his back, struck him in the arm with a flashlight, and handcuffed him. *Id.* at 606 & n.1. The court concluded that this force was objectively reasonable given the seriousness of the suspected offense and the student's failure to obey commands. *Id.* at 608.

11. As the Fifth Circuit held in *Brothers*, an officer was entitled to use a proportional amount of force which in that case included pulling a non-compliant, intoxicated man out of his elevated truck after spending only approximately two minutes negotiating with the driver. *Brothers,* 837 F.3d at 516, 520. Furthermore, the Fifth Circuit's holding in *Neuman* indicates that it is objectively reasonable for an officer to first try the use of physical skill, negotiation, or even commands and once those fail a greater degree of force can be used. *Newman*, 703 F.3d at 759–60. In *Neuman*, that use of force was tasing the individual three times and using a night stick.

12. Here, Plaintiff argues that the Officers' use of force was constitutionally unreasonable by relying on a few cases where officers used more force against suspects of much less serious crimes than the violent assault of a female that Plaintiff was suspected of having committed. He cites is *Bush v. Strain,* where a detective attempted to arrest the plaintiff for simple battery after the

plaintiff threw a glass of ice water at a witness. 513 F.3d 492, 496 (5th Cir. 2008). When the plaintiff pulled her arm away, under the version of the facts most favorable to her, the detective "placed his hand behind her neck and head and forced her face into the rear window of a nearby vehicle, injuring her jaw and breaking two of her teeth." *Id*. In *Bush*, the officers "forcefully slammed Bush's face into a vehicle when Bush was handcuffed and subdued" causing injuries to her face, teeth and jaw. They did not just "hit the plaintiff once during a traffic stop in response to passive resistance" as Plaintiff here states in his response.

13. In *Deville*, officers stopped a woman for driving ten miles per hour over the speed limit and then, when she refused to exit the vehicle until her husband could come take custody of her two-year-old granddaughter, broke her window with a heavy flashlight, dragged her out of her vehicle, threw her up against its side resulting in a blow to her abdominal area that later caused her to fall to the ground, and handcuffed her so tightly it caused severe nerve damage. 567 F.3d at 161–62, 168. The Officers' use of force in *Deville* is far greater than any force used in this case.

14. In *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012), the Fifth Circuit held that an officer's quick application of a drive stun with a taser in order to subdue a noncompliant arrestee, after giving multiple verbal commands, was reasonable. Also, in *Pratt v. Harris Cnty., Tex.*, 822 F.3d 174, 182 (5th Cir. 2016), the Fifth Circuit held that multiple tasings were reasonable where handcuffed arrestee continued resisting and kicking. Here, there are no allegations or evidence that a taser was ever deployed.

15. In *Hanks v. Rogers*, 853 F.3d 738, 742–43 (5th Cir. 2017), the Fifth Circuit stated that an officer applies unconstitutionally excessive force "if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a

minor traffic violation." *Id.* at 747. In that case an officer ordered the plaintiff to drop to his knees, whereupon the plaintiff put his hands behind his back and looked over his shoulder while asking whether he was under arrest. *Id.* at 742. After the officer repeated his instruction several times, the plaintiff—still with his hands behind his back—"made a small lateral step with his left foot." *Id.* The officer then "rushed toward [the plaintiff] and administered a blow to [the plaintiff's] upper back or neck." *Id.* at 743. Lastly, *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014), is a case where the Supreme Court held that an officer may not use deadly force without an objective and reasonable belief that a suspect presents an immediate threat to his safety. The Officers here agree with this general statement of the law, but it is not at issue in this case.

16. None of the authority cited by Plaintiff addresses facts similar to those of this case rather they just state general propositions of law. Citing a case at such a high level of generality fails to satisfy Plaintiff's burden: to show that the law was clearly established that the Officers could not have had an objective and reasonable belief that Plaintiff presented an immediate threat to their safety under the specific facts of this case. *See Vann*, 884 F.3d at 309–10; *Cass*, 814 F.3d at 732–33. Simply put, finding that a Fourth Amendment violation occurred in this case is not "beyond debate." *Hanks*, 853 F.3d at 746–47 (quoting *White v. Pauly*, — U.S. —, 137 S.Ct. 548, 551 (2017) (per curiam)). Accordingly, this Court should render summary judgment for the Officers on the basis of qualified immunity.

**Failure to Provide Medical Care**

17. Plaintiff in his response does not cite to any cases which have even remotely similar facts to the facts presented here when it comes to his deliberate indifference claim and, as such, he has failed to meet his burden under qualified immunity analysis that the law is clearly established that the Officers' conducted violated his constitutional rights when it comes to medical care. Plaintiffs

rely on *Mace* which the Officers rely on; however, in relying on it, Plaintiff highlights the proposition that at the very least the law is not clearly established. Plaintiff makes reference to *Cope v. Cogdill*, 3 F.4th 198, 209(5th Cir. 2021), cert denied, — U.S. —, 142 S.Ct. 2573, 213 L.Ed.2d 1123 (2022) for the proposition that "promptly failing to call for emergency assistance when a detainee faces a known, serious medical emergency . . . constitutes unconstitutional conduct." The Officers do not disagree with that proposition of law necessarily, but that is not what happened here. The undisputed competent summary judgment evidence conclusively establishes that EMS was immediately called once Plaintiff complained of his neck hurting.

18. Contrary to Plaintiff's position that the Officers violated clearly established law, based on this District and the Fifth Circuit's rulings in *Fortune*, *Mace* and *Marshall* as explained in the Motion for Summary Judgment, a reasonable officer could have believed that none of the Officers violated Plaintiff's rights in failing to provide adequate medical care where the Officers called for EMS right after Plaintiff complained of his neck hurting. No case law exists establishing a violation of Plaintiff's constitutional rights beyond debate at the time of the incident made the basis of this suit. In fact, the existing case law favors the Officers.

## IV. Conclusion

WHEREFORE, PREMISES CONSIDERED, Defendants, Trenton Ballard, Royall Allen, Roger Belario and Taylor Herrera, pray that the Court GRANT their Motion for Summary Judgment and dismiss all causes of action asserted by Plaintiff against them and for such other and further relief to which they may be justly entitled.

Respectfully submitted,

CULLEN, CARSNER, SEERDEN & CULLEN, L.L.P.
119 South Main Street (77901)
Post Office Box 2938
Victoria, Texas 77902-2938
Tel: (361) 573-6318
Fax: (361) 573-2603

By: /s/ Casey T. Cullen
Casey T. Cullen
Southern District of Texas Bar No. 1130427
**ATTORNEYS FOR DEFENDANTS DEFENDANTS TRENTON BALLARD, ROYALL ALLEN, ROGER BELARIO AND TAYLOR HERRERA**

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing pleading has been served on all counsel of record on this the 19th day of July, 2024 via ECF electronic notice in compliance with Rule 5 of the Federal Rules of Civil Procedure and paragraph 9 of the Southern District of Texas's Administrative Procedures for Electronic Filing in Civil and Criminal Cases by notice of Electronic Filing in accordance with the Federal Rules of Civil Procedure.

/s/ Casey T. Cullen
Casey T. Cullen